IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CHURCH INSURANCE COMPANY,
AS SUBROGEE TO THE RIGHTS OF
CATHEDRAL CHURCH OF ST. JOHN
THE DIVINE IN THE CITY AND
DIOCESE OF NEW YORK

                Plaintiff

      vs.

TRIPP MANUFACTURING COMPANY
d/b/a TRIPP LITE

            Defendant
-----------------------------------------------------------------X

Civil Action: 04-CIV 6111 (HB)

**PLAINTIFF'S MOTION FOR
NEW TRIAL PURSUANT TO
FEDERAL RULE OF CIVIL
PROCEDURE 59**

Document Electronically Filed

Plaintiff, Church Insurance Company, as subrogee to the rights of Cathedral Church of St. John The Divine in the City and Diocese of New York, by and through its attorneys, Cozen O'Connor, hereby moves for a New Trial pursuant to Federal Rule of Civil Procedure 59, and in support thereof, Plaintiff respectfully states as follows:

1.     Pursuant to the terms and conditions of its fire insurance policy, Church Insurance Company paid $41,500,000 to The Cathedral Church of St. John The Divine (hereinafter "the Cathedral") as a result of property damage sustained by the Cathedral in a fire which occurred on December 18, 2001.

2.     As a result of the foregoing payment, Church Insurance Company became subrogated to the rights of the Cathedral Church of St. John the Divine.

3.     Plaintiff initiated this action against Defendant Tripp Manufacturing Company, d/b/a Tripp Lite (hereinafter "Tripp Lite") on August 6, 2004 alleging causes of action for negligence, breach of warranty and strict product liability.[1]

---

[1]    Plaintiff voluntarily withdrew plaintiff's claims for negligence and breach of warranty prior to trial and proceeded to trial solely on its strict liability claim.

4.     Plaintiff commenced this action in the name of its insured as is permitted under New York and Federal law.

5.     This case was tried in seven days before the Honorable Harold Baer, Jr. and a jury between September 29, 2005 and October 14, 2005.

6.     After deliberating for approximately two hours, the jury returned a verdict in favor of defendant, finding that the defendant did not manufacture a defective product.

7.     Plaintiff seeks a New Trial pursuant to Federal Rule of Civil Procedure 59.

8.     The grounds asserted by the Plaintiff in support of its Motion for a New Trial are as follows: A) The Court erred in granting Defendant's Motion to substitute Church Insurance Company as the named Plaintiff after Plaintiff's counsel completed his voir dire questioning of the jury; B) The Court erred in denying Plaintiff's Motion for Mistrial after defense counsel made a totally improper and completely unfounded reference to a product recall of the multi-strip surge protector; C) The Court erred in denying Plaintiff's Motion to Preclude evidence of compliance with industry standards in this strict products liability action; D) The Court erred in permitting defendant to introduce evidence that defendant's president and its expert were unaware of any other fires caused by Isobar 4 surge protectors; E) The Court erred in denying Plaintiff's Motion to Preclude Defendant's liability expert Dr. Andrew Neuhalfen for failing to timely supply expert disclosures in violation of Federal Rule of Civil Procedure 26(a)(2)(B) and this Court's Pretrial Scheduling Order; and F) The Court erred denying Plaintiff's Motion at trial to preclude the testimony of Kenneth Bucher.

### A.     The Court Erred in Granting Defendant's Motion to Substitute Church Insurance Company as the Named Plaintiff.

9.     Defendant sent a letter dated September 26, 2005 to the Court requesting that the Court permit the designation of Church Insurance Company as the plaintiff in this case.  See a copy of the letter request dated September 26, 2005 attached hereto as Exhibit "A."

- 2 -

10.      This Court erred in considering and then granting Defendant's late Motion to Substitute Church Insurance Company as the named plaintiff.

11.      Under Federal Law, a subrogation action can be brought in the name of the insured if the insurance carrier has made only partial payment of the entire loss. St. Paul Fire & Marine Ins. vs. Universal Builders Supply, Inc., 409 F.3d 73, 81 (2d Cir. 2005) (citing United States vs. Aetna Casualty and Surety Company, 338 U.S. 366, 381 (1949)); Reliant Airlines, Inc. v. County of Broome, 1993 WL 276747 (N.D.N.Y. 1993).

12.      Even when there are no uninsured claims in a subrogation action, Courts have recognized that the subrogation action may proceed in the name of the insured if a ratification agreement has been executed, ensuring that the judgment will have res judicata effect against the insurer. Reliant Airlines, Inc. v. County of Broome, 1993 WL 276747 (N.D.N.Y. 1993); B.R.I. Coverage Corp. v. Air Canada, 725 F. Sup. 133, 136 (E.D.N.Y. 1989).  In this case, Plaintiff offered to secure such a ratification agreement after defendant filed its motion, but defense counsel said no such agreement was necessary.

13.      The payment of $41,500,000 by Church Insurance Company to its insured did not fully reimburse the Cathedral for all of the damages which the Cathedral sustained as a result of the fire.  Thus, the Cathedral joined with the Church Insurance Company in this action in pursuing a claim for uninsured losses amounting to approximately $16,000,000.

14.      Since Church Insurance Company made only partial payment to the Cathedral for the loss, this action was properly commenced in the name of the Cathedral.

15.     On the day before Jury Selection, defendant entered into a settlement with the Cathedral only to resolve its uninsured claim.[2]

16.     Defendant's settlement of the uninsured claims the day before trial for the strategic purpose of enabling it to file a motion to change the name of the Plaintiff did not provide sufficient grounds to substitute Church Insurance Company as the named Plaintiff. The settlement did not alter the fact that the payment made by Church Insurance Company was only a partial payment to the Cathedral for its losses as a result of the fire which entitled the action to be brought in the name of the Cathedral.

17.     In addition, substitution of the named Plaintiff was improper since Church Insurance Company offered to have a ratification agreement prepared pursuant to Rule 17(a) so that the case could proceed in the name of the Cathedral, but defense counsel stated that no such agreement was necessary.

18.     A motion to amend a pleading or substitute a named plaintiff on the eve of trial should not be granted if the opposing party will be prejudiced by the amendment or substitution. Ansam Associates, Inc. v. Cola Petroleum, Ltd., 760 F.2d 442 (2d Cir. 1985 Starter Corporation vs. Commerce, Inc., 1996 WL 684165 (S.D.N.Y. 1996); see also Harris v. Illinois-California Express, Inc., 687 F.2d 1361 (10th Cir. 1982) (denying motion to substitute named plaintiff pursuant to Rule 17(a) which was filed two weeks before trial).

19.     A Rule 17(a) motion to substitute the insurance carrier as the named plaintiff in a subrogation action should not be granted if the plaintiff would suffer prejudice through the possibility of bias after the jurors were made aware of the fact that the insurers were involved in the action. Reliant Airlines, Inc. v. County of Broome, 1993 WL 276747 (N.D.N.Y. 1993); See

---

[2]     This settlement expressly permitted plaintiff to proceed to trial with its subrogation claim.

- 4 -

<u>also</u> <u>Whitehall Building Corporation vs. Profexray Division of Litton Industries, Inc.</u>, 387
F.Supp. 1202 (E.D.Pa. 1974).

20.    Plaintiff was severely prejudiced by the Court's ruling since Plaintiff's counsel in
his voir dire first advised the jury that he represented the Cathedral and then after the Court ruled
in Defendant's favor, Plaintiff's counsel had to advise the jury that the plaintiff was now the
Cathedral's insurance company.  In addition, plaintiff's counsel was not given the opportunity to
fully explore any bias that prospective jurors may have had against Church Insurance Company
or insurance companies in general.

21.    Plaintiff was also prejudiced by the Court's ruling in that defense counsel,
throughout the trial, routinely made derogatory remarks about the insurance company, which
remarks he would not have been permitted to make if there was no substitution of the named
Plaintiff.

22.    Defense counsel repeatedly referred to the Plaintiff as "the insurance company"
throughout the trial, inviting jurors to call upon any biases they may have had against insurance
companies.

23.    Specifically, references were made to Church Insurance Company, including the
following statement from the trial transcript which is attached as Exhibit "B":

> By Mr. Haesloop in his opening argument:
>
> And to that extent, it's no wonder that the Church Insurance
> Company wanted to investigate the cause. (September 29, 2005, p.
> 21, lines 1-3).
>
> In Mr. Haesloop's summation he stated the following:
>
> And don't forget for one minute that the Cathedral of St. John The
> Divine is the not the plaintiff in this case.  It is the Church
> Insurance Company.  As some of you are probably sitting there
> saying, I have a question, how did that happen?  How did that
> change occur from when we first started this case?  Well, the
> Church Insurance Company paid the Cathedral, as you have heard,

$41.5 million for their damages. ... However, and the only thing I'm going to say on damages, is the Church Insurance Company was outsmarted by the Cathedral's rush to justice and they paid a lot more than they had to pay.  See a copy of the pertinent parts of Mr. Haesloop's summation on October 14, 2005, p. 856, lines 3-17 attached hereto as Exhibit "C".

24.     The foregoing references to Church Insurance Company and numerous others resulted in extreme prejudice to plaintiff throughout the course of the trial.

25.     Plaintiff was entitled to bring this action in the name of its insured, and Plaintiff respectfully submits that the Court erred in ordering a change in the name of the Plaintiff after Plaintiff's counsel completed his voir dire examination of the jury.

### B.     The Court Erred in Denying Plaintiff's Motion for Mistrial after Defense Counsel made an Unfounded Reference to a Product Recall of the Multi-Strip Surge Protector

26.     Defendant's defense in this case was not only that its surge protector did not start the Cathedral fire, but that a multi-strip surge protector found in the area of origin was the cause of the fire.

27.     Defense counsel improperly interjected his own testimony regarding a purported product recall of the multi-strip surge protector during his cross examination of plaintiff's first called expert, Howard DeMatties.  Defense counsel's completely unfounded comment that there was a recall of the multi-strip tainted the jury at the start of the trial, resulting in severe prejudice to plaintiff which plaintiff could not overcome.

28.     Counsel questioned Mr. DeMatties in the following manner on September 30, 2005, which testimony (p. 269, lines 18-25) is attached as Exhibit "D":

Q:     Does that indicate, does that answer indicate to you, sir, I was unable to get one, that you at least tried to get one?

A:     I was attempting to find one to try to get it and I never found one to get is what I am saying.

Q:     **And the reason you never found one is because they were recalled by the Product Safety Commission?**

- 6 -

Mr. Fallon: Objection. I move for a mistrial.

The Court: Denied. You and your colleague and the witness may know a lot about what is going on. The judge and the jury know very little, so indeed I don't think that is a terribly significant problem but I suggest you don't try it again, Mr. Haesloop.

Mr. Haesloop: I understand, your Honor.

29.     On October 3, 2005, plaintiff submitted a Motion for Reconsideration, via letter, of this Court's ruling denying Plaintiff's Motion for a Mistrial which the Court denied. See a copy of Plaintiff's Motion for Reconsideration of the Court's ruling denying Plaintiff's Motion for Mistrial attached hereto as Exhibit "E."

30.     While a curative instruction was not given to the jury at the time of questioning by Mr. Haesloop on September 30, 2005, a curative instruction was given to the jury during the Court's overall charge to the jury on October 14, 2005. Unfortunately, the crippling damage to plaintiff's case had already been done, and the curative instruction could did not restore a level playing field for the parties.

31.     Defense counsel knew that the multi-strip in question was not the subject of a recall, and he asked the foregoing question to simply poison the jury's minds against the multi-strip early in the case.

32.     There was no product recall of the subject multi-strip surge protector.

33.     Defense counsel purposely and knowingly stated that there was a product recall of the multi-strip which he clearly knew did not exist. Therefore, his only purpose in making the comment was to improperly plant the idea of a recall in the minds of the jurors. Defense counsel succeeded in tainting the jury and irreversibly prejudicing plaintiff in this case.

34.     It is monumentally important that the bounds of counsel's advocacy are circumscribed by considerations of the prejudice it might engender in order to maintain a fair trial. <u>Pappas v. Middle Earth Condominium Association</u>, 963 F.2d 534, 539 (2d Cir. 1992). When the conduct of counsel causes prejudice to the opposing party and unfairly influences a jury's verdict, a new trial should be granted.  <u>Id</u>.

35.     In view of the foregoing, the only way to ensure that plaintiff was afforded a fair trial is to grant Plaintiff's Motion for New Trial.

<strong><em>C.     The Court Erred in Denying Plaintiff's Motion to<br>Preclude Evidence of Compliance with the Underwriter's<br><u>Laboratories, Inc. Standards in this Strict Liability Action</u></em></strong>

36.     Plaintiff submitted, via letter, a Motion to Preclude defendant from introducing evidence of compliance with Underwriter's Laboratories, Inc. standards since compliance with such industry standards is inadmissible in cases involving only strict liability actions (as opposed to negligence and strict liability claims).  See Exhibit "E".

37.     This Honorable Court denied Plaintiff's Motion to Preclude defendant from introducing evidence of the Underwriter's Laboratories, Inc. standard. See a copy of the Memorandum and Order dated October 19, 2005 attached hereto as Exhibit "F".

38.     Industry standards are not relevant to causes of action grounded in strict products liability. <u>Jemmott v. Rockwell Manufacturing Company</u>, 628 N.Y.S.2d 186 (App. Div.2d 1995). See also, <u>Contini v. Hyundai Motor Company</u>, 865 F.Supp. 122 (S.D.N.Y. 1994)

39.     Although compliance with the industry standards is admissible in cases involving both negligence and strict liability claims, compliance with industry standards is clearly not relevant in cases involving only strict product liability claims as it has been widely held that such standards establish the standard of care in negligence cases only. <u>See</u> <u>McCoy v. Whirlpool Corp.</u>, 2003 WL 21554950 (D. Kan. 2003); <u>Wheeler v. John Deer Co.</u>, 935 F.2d 1090, 1099 (10th Cir.

- 8 -

1991); 935 F.2d 1090, 1099 (10th Cir. 1991); <u>Raney v. Honeywell, Inc.</u>, 540 F.2d 932, 938 (8th Cir. 1976); <u>Rexrode v. American Laundry Press Co.</u>, 674 F.2d 826 (10th Cir. 1982); <u>Straub v. Simmons Co.</u>, 1992 WL 176419 (E.D.Pa. 1992).

40.     During the trial of this action, the defendant was permitted to improperly argue that its product was not defective since Tripp Lite complied with the Underwriter's Laboratories, Inc. standard 1449 for surge protectors. As a result, the jury determined that the subject Tripp Lite Isobar 4 was not defective and rendered a defense verdict.

**D.      *The Court Erred in Permitting Defendant to Introduce Evidence that Plaintiff's President and Expert Were Unaware Of Any Other Fires Caused By Isobar 4 Surge Protectors.***

41.     During the course of trial, defense counsel asked defendant's President, Barre Seid, and its expert Dr. Andrew Neuhalfen if they were aware of any other fires involving Isobar 4 surge protectors and over objection by defense counsel, the Court permitted them to say that they were not aware of other fires. (See trial transcript pp. 546 and 731 attached hereto as Exhibit "G" and "H".)

42.     Permitting the foregoing questions when there was no evidence that the Isobar 4 surge protector with the Revision A circuit board involved in this case was substantially similar from an electrical design standpoint to the other Isobar 4 units was improper and also highly prejudicial to the plaintiff in this case.

**E.      *The Court Erred in Denying Plaintiff's Motion to Preclude Dr. Andrew Neuhalfen***

43.     Plaintiff filed a Motion to Preclude the testimony of Defendant's liability expert Dr. Andrew Neuhalfen. See a copy of Plaintiff's Motion to Preclude attached as Exhibit "I."

44.     Plaintiff filed a Reply to Defendant's Response to the Motion to Preclude.  See a copy of Plaintiff's Reply to Defendant's Response attached as Exhibit "J."

45.     This Court denied plaintiff's motion to preclude testimony due to late submissions.  See transcript from September 29, 2005, p. 4, lines 2-6 attached as Exhibit "K".

46.     This Court issued a Pretrial Scheduling Order dated December 2, 2004 requiring plaintiff to submit expert disclosures within forty-five (45) days before the agreed upon trial month of October 2005.  See Exhibit "A" of Plaintiff's Motion to Preclude attached as Exhibit "I".

47.     In accordance with the December 2, 2004 Order, plaintiff's expert disclosures were due on August 15, 2005.  See Exhibit "A" of Plaintiff's Motion to Preclude attached as Exhibit "I".  Plaintiff timely hand delivered to counsel for defendant by courier all of plaintiff's expert disclosures on August 12, 2005.  See Exhibit "B" of Plaintiff's Motion to Preclude attached as Exhibit "I".

48.     The aforesaid Order also provided that defendant's expert disclosures were due twenty-one (21) days after plaintiff served its expert disclosures on defendant.  Thus, defendant's expert disclosures were due on September 2, 2005.  See Exhibit "A" of Plaintiff's Motion to Preclude attached as Exhibit "I".

49.     On September 9, 2005 at 4:31 p.m., one week beyond the deadline for the defendant to submit expert disclosures according to the Court's Pretrial Scheduling Order, plaintiff received via facsimile, a 42 page report prepared by Andrew Neuhalfen of Packer Engineering.  See Exhibit "A" of Plaintiff's Reply to Defendant's Response to the Motion to Preclude attached hereto as Exhibit "J".

50.     The expert report was not accompanied by a list of Andrew Neuhalfen's testimony in other proceedings over the last four years in accordance with Federal Rule of Civil Procedure 26(a)(2)(B).  That list was faxed to plaintiff's counsel on September 16, 2005.  See Exhibit "A" of Plaintiff's Reply to Defendant's Response to the Motion to Preclude attached as Exhibit "J."

51.     Additionally, the September 9, 2005 report was not accompanied by copies of the Energy Dispersive Spectroscopy (EDS) or SEM testing results for tests performed by Andrew Neuhalfen at Packer Engineering in Naperville, Illinois during the last week of August 2005 which provided the basis for many of Dr. Neuhalfen's opinions.  See paragraph 6 of Plaintiff's Reply to Defendant's Response to the Motion to Preclude attached hereto as Exhibit "J".

52.     Plaintiff did not receive a hard copy of Dr. Neuhalfen's September 9, 2005 report with photographs and the supporting SEM/EDS testing until September 13, 2005.  See paragraph 8 of Plaintiff's Reply to Defendant's Response to the Motion to Preclude attached as Exhibit "J".

53.     Packer Engineering, Dr. Neuhalfen's employer, prepared a preliminary report on June 15, 2004 which outlines findings and analysis with regard to the fire on December 18, 2001. See Exhibit "C" of Plaintiff's Reply to Defendant's Response to the Motion to Preclude attached as Exhibit "J".  This report was not provided to plaintiff's counsel until September 16, 2005, two weeks after the date upon which expert reports were due.  See paragraph 11 of Plaintiff's Reply to Defendant's Response to the Motion to Preclude attached as Exhibit "J".

54.     Based on the foregoing, the Court also erred in denying Plaintiff's Motion to Preclude Dr. Neuhalfen from testifying at trial for his failure to comply with the mandates of Federal Rule of Civil Procedure 26(a)(2) and the Pretrial Scheduling Order dated December 2, 2004.

### F.    *The Court Erred in permitting Kenneth Bucher to testify*

55.     Kenneth Bucher was called as a defense witness on the subject of damages.

56.     An expert witness must be qualified in the field of expertise in which he testifies. Nimely v. City of New York, 414 F.3d 381 (2nd Cir. 2005). Kenneth Bucher was not qualified to testify on the subject of damages, and plaintiff moved to preclude his testimony after voir dire but the Court improperly denied plaintiff's motion. See pages 596-608 of the testimony of Kenneth Bucher attached hereto as Exhibit "L".

57.     Kenneth Bucher was permitted to make incorrect statements with regard to the measure of damages in the case such as actual cash value or ACV. See pages 613-615 of the testimony of Kenneth Bucher attached hereto as Exhibit "M". The proper measure of damages is the cost of repair and not ACV. Fisher v. Qualico Contracting Corp., 98 N.Y. 2d 534; 749 N.Y. S. 2d 467; 779 N.E. 2d 178 (2002).

58.     Plaintiff's counsel repeatedly objected to Mr. Bucher's incorrect measure of damages, but he was permitted to testify without being qualified and without being limited to the proper measure of damages in this case. See Exhibit "L" and Exhibit "M".

59.     While the jury admittedly did not reach the issue of damages, permitting an unqualified witness to opine that the Insurance Company overpaid the claim as defense counsel stated in his closing, once again resulted in plaintiff suffering undue prejudice during the course of the trial of this action. This prejudice compounded the prejudice caused by the late substitution of Church Insurance Company as the named plaintiff in this case.

### G.    *Conclusion*

60.     Based upon all of the foregoing, Plaintiff respectfully submits that it was deprived of a fair trial, and therefore Plaintiff respectfully asks this Court to grant Plaintiff's Motion for a New Trial.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant Plaintiff's Motion for a New Trial and enter the order attached.

COZEN O'CONNOR

BY:___/s/ Christopher C. Fallon, Jr._____
        Christopher C. Fallon, Jr. (CF9482)
        45 Broadway Atrium
        New York, NY 10006
        212-509-9400
        Attorney for Plaintiff

OF COUNSEL:
A. Richard Bailey, Esquire
Robert W. Shaw, III, Esquire
Cozen O'Connor
1900 Market Street
The Atrium
Philadelphia, PA 19103

Dated: October 23, 2005