UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHURCH INSURANCE COMPANY,

                           Plaintiff,

  -against-

TRIPPE MANUFACTURING COMPANY
d/b/a TRIPP LITE,

                           Defendant.
------------------------------------------------------------x

04 Civ. 6111 (HB)

**OPINION & ORDER**

**Hon. Harold Baer, Jr., District Judge:**

      Plaintiff Church Insurance Company ("Church Insurance") brought this product liability action as subrogee of the Cathedral Church of St. John the Divine (the "Cathedral") against Trippe Manufacturing Company[1] ("Trippe"). The case was tried to a jury beginning on September 29, 2005. On October 14, 2005, the jury returned a verdict for the defendant. Plaintiff now moves for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Oral argument was held on November 29, 2005. Plaintiff argues that this Court erred by: 1) granting defendant's motion to substitute Church Insurance for the Cathedral as named plaintiff in this action; 2) denying plaintiff's motion for a mistrial after defense counsel made an improper reference to a product safety recall during cross-examination of one of plaintiff's experts; 3) denying plaintiff's motion to preclude evidence of compliance with industry standards; 4) permitting defendant to question witnesses regarding the frequency of fires caused by defendant's product; 5) denying plaintiff's motion to preclude defendant's liability expert for failing to timely provide expert disclosures; and 6) permitting defendant's damages expert to testify. For the foregoing reasons, plaintiff's motion is DENIED.

---

[1] The parties refer to the defendant alternately as "Trippe" or "Tripp" Manufacturing Company. Since the complaint named "Trippe Manufacturing Company," this Court will use that spelling.

1

**I. BACKGROUND**

This action stems from a fire that occurred on December 18, 2001 that severely damaged the Cathedral. Pursuant to the terms of a fire insurance policy, Church Insurance paid the Cathedral $41,500,000 to cover damage caused by the fire. (Plaintiff's Motion for a New Trial dated October 23, 2005 ("Pl.'s Mot.") ¶ 1). Church Insurance then initiated this subrogation action, in the name of the Cathedral, against Trippe. Church Insurance brought claims for negligence, breach of warranty, and strict products liability, alleging that a defective surge suppressor, manufactured by Trippe, caused the fire. However, Church Insurance withdrew its negligence and breach of warranty claims prior to trial. (Pl.'s Mot. ¶ 3 n.1). Originally, the Cathedral also asserted a claim against Trippe for uninsured losses. (Pl.'s Mot. ¶ 13). However, the day before jury selection, the Cathedral settled that claim. (Pl.'s Mot. ¶ 15). On October 14, 2005, the jury returned a verdict for the defendant, finding that Trippe's product was not defective. (Pl.'s Mot. ¶ 6).

**II. DISCUSSION**

A motion for a new trial pursuant to Rule 59 should be granted only if "the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice." Nimely v. City of New York, 414 F.3d 381, 392 (2d Cir. 2005) (internal quotation omitted). A new trial is necessary if "the introduction of inadmissible evidence was a clear abuse of discretion *and* was so clearly prejudicial to the outcome of the trial that . . . that the jury . . . reached a seriously erroneous result or . . . the verdict [was] a miscarriage of justice." Id. at 399 (internal quotation omitted ) (emphasis in original). Evidentiary errors by the trial court are deemed harmless unless they render the jury's verdict "contrary to the interests of 'substantial justice.'" Id. (quoting Fed. R. Civ. P. 61).

### A. Substitution of Church Insurance Company as Named Plaintiff

Immediately before jury selection began, defendant moved to substitute Church Insurance for the Cathedral as named plaintiff in this action.[2] (Pre-Trial Conference Transcript dated 9/29/05 ("PTC Tr.") 20). Defendant argued that, since the Cathedral had settled its claim for uninsured losses the day before, the sole remaining party in interest in the litigation was Church Insurance. I initially reserved decision on the motion, (PTC Tr. 24, 32-33), but then granted the motion during voir dire. (Trial Transcript "Tr." 3).[3] Plaintiff now argues that this Court erred in granting defendant's motion because plaintiff was entitled to bring this action in the name of the Cathedral, and that plaintiff was prejudiced by the substitution since it occurred shortly before the trial commenced.

Generally, under New York law, an insurer may sue in the name of its insured when a subrogation receipt has been executed. See, e.g., Solomon v. Consol. Resistance Co. of America, 468 N.Y.S.2d 532, 533 (2d Dep't 1983). However, "in diversity cases federal law governs the issue of in whose name a lawsuit must be brought, even though state law controls the underlying substantive right of an insured to recovery." Brocklesby Transport v. Eastern States Escort Servs., 904 F.2d 131, 133 (2d Cir. 1990). Rule 17(a) of the Federal Rules of Civil Procedure provides that "[e]very action shall be prosecuted in the name of the real party in interest." "Under federal law, if an insurer has compensated an insured for an entire loss, the insurer is the only real party[]in[]interest and must sue in its own name; however, if the insured is only partially compensated by the insurer, both the insurer and the insured are real parties[]in[]interest." Brocklesby, 904 F.3d at 133 (citing United States v. Aetna Cas. & Surety Co., 338 U.S. 366, 380-82 (1949).

Plaintiff argues that the Cathedral remained a real party in interest because the Cathedral was not fully compensated by Church Insurance for its loss in the fire. However, plaintiff does not dispute the fact that the Cathedral settled its claim for uninsured losses the day before trial. (Pl's Mot. ¶ 15). After this settlement was effectuated, the Cathedral had no further interest in the litigation. Plaintiff further argues

---

[2] Three days earlier, by letter dated September 26, 2005, defendant sought permission to join Church Insurance as a "necessary party in interest." (Def.'s Letter dated September 26, 2005). However, when this motion was argued, defendant instead sought to substitute Church Insurance as named plaintiff.

[3] I re-affirmed my ruling, over plaintiff's renewed objection, after jury selection was completed. (Tr. 2-5).

that the Court should have accepted a ratification agreement from Church Insurance in lieu of substitution.[4] Plaintiff relies on Reliant Airlines, Inc. v. County of Broome, 90 Civ. 537, 1993 WL 276747, *4 (N.D.N.Y. July 19, 1993) for the proposition that "Rule 17(a) allows ratification to foreclose joinder *or* substitution of the real party in interest." (emphasis in original). In Reliant, however, the insured sought "greater damages then that paid to it by" its insurer. Id. at *3. See also Prosperity Realty, Inc. v. Haco-Canon, 724 F. Supp. 254, 258 (S.D.N.Y. 1989) (declining to substitute insurer when insurer had submitted ratification agreement and had compensated insured for all but $1,000 of insured's loss). Here, after settling its claim for uninsured losses, the Cathedral retained no financial interest in the litigation. In any case, "[a] court has discretion to determine when ratification is permissible." Pemex v. Tbilisi Shipping Co. Ltd., 04 Civ. 2705, 2004 WL 1944450, * 4 (S.D.N.Y. Aug. 31, 2004) (Baer, J.). It was well within this Court's discretion to substitute Church Insurance for the Cathedral after the Cathedral's sole claim had been settled.

Plaintiff further argues that this Court should have refused to substitute Church Insurance because defendant's motion was made immediately before jury selection. However, the Cathedral had only just settled its claim for uninsured losses the day before. Plaintiff asserts that defendant strategically delayed settling the Cathedral's claim until the day before trial in order to substitute Church Insurance as named plaintiff. Plaintiff's theory is both purely speculative and illogical. Defendant could have made the same motion and achieved the same result had it settled with the Cathedral a month before trial. It is unclear why plaintiff would have suffered less prejudice had the substitution been made a few weeks earlier.

Plaintiff argues that its prejudice was compounded by the fact that the substitution occurred after voir dire had already begun, and that therefore the jury may have been confused by the switch. However, plaintiff concedes that it was permitted to voir dire prospective jurors regarding their feelings toward insurance companies. (Plaintiff's Memorandum of Law, dated October 23, 2005 ("Pl.'s Mem.") at 8). It should also be noted that plaintiff made no motion for a mistrial and a new panel during jury selection, a

---

[4] Although plaintiff offered no such ratification agreement, plaintiff contends that Church Insurance was willing and able to provide an agreement that Church Insurance would be bound by the outcome of this litigation.

4

request easily granted since it would have brought with it no appreciable delay at that early stage of the trial. Plaintiff also asserts that defense counsel's references to Church Insurance's payment to the Cathedral were prejudicial. (Tr. 21, 856). However, I instructed the jury that they could not consider the fact that this action was based on the right of subrogation in arriving at their verdict, and that they were "to consider this case no differently than . . .if the Cathedral . . . had no insurance on its property." (Tr. 911). Furthermore, the jury necessarily heard testimony regarding Church Insurance's payment to the Cathedral during the testimony on damages, since defendant argued that Church Insurance had overcompensated the Cathedral for its loss. Thus, plaintiff suffered no prejudice by the substitution of Church Insurance as named plaintiff. Finally, in today's world the danger of prejudice of this kind has eroded, that is, just about everyone and everything is insured and insurance no longer carries the same negative connotation it once did. Consequently, the mention of insurance does not signal the kind of prejudice it once signaled.

### B. Defense Counsel's Reference to a Product Safety Recall

Throughout trial, defendant argued that the fire was caused not by Trippe's product, but rather by an unidentified "multi-strip" surge protector also recovered from the scene of the fire. During the cross-examination of one of plaintiff's experts, Howard DeMatties, defense counsel questioned DeMatties regarding DeMatties' efforts to identify the multi-strip product. Defense counsel asked DeMatties if he had procured an exemplar of a multi-strip product manufactured by "Sanshi," one of the possible manufacturers of the unidentified multi-strip product. (Tr. 267-269). After DeMatties testified that he had never procured an exemplar of the Sanshi product, defense counsel posed the following question: "And the reason you never found one is because they were recalled by the Product Safety Commision?" (Tr. 269). Plaintiff immediately objected and moved for a mistrial. I denied plaintiff's motion, but directed defense counsel to abandon that particular line of inquiry. (Tr. 270). By letter dated October 3, 2005, plaintiff renewed its request for a mistrial, which I again denied. However, after closing arguments, I instructed the jury as follows: "You are instructed to disregard any comment by the defense that the multi-strip product found in the fire was the subject of a

recall by the Consumer Product Safety Commission. The multi-strip product found in the fire was not the subject of any such recall." (Tr. 914).

Plaintiff now argues, once again, that defense counsel had no good-faith basis for his question, that the question was therefore improper, and that plaintiff suffered substantial prejudice as a result. To counter these assertions, defense counsel has submitted an affidavit stating that, on the day he questioned DeMatties, he had received information from his experts which stated that "a product identical to, if not the Sanshi product, had been the subject of a [Consumer Products Safety Commission] recall." (Affidavit of Gordon Haesloop ("Haesloop Aff.") ¶ 4).[5] Plaintiff asserts that this statement is not credible since, just one week earlier, defendant's liability expert had testified at his deposition that he had been unable to identify the manufacturer of the multi-strip product or link that product to a safety recall. (Pl.'s Reply, Ex. A). Plaintiff further argues that, had defense counsel possessed evidence linking the multi-strip product to a safety recall, that evidence would have been introduced during defendant's case.

Whether appropriate or not, the question did not create prejudice sufficient to justify a new trial. "[A] party seeking a new trial on the basis of opposing counsel's improper statements to the jury faces a heavy burden, as rarely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal." Marcic v. Reinauer Transportation Companies, 397 F.3d 120, 124 (2d Cir. 2005). Defense counsel's single remark regarding the supposed recall, coupled with this Court's curative instruction, did not create substantial prejudice.[6]

---

[5] Haesloop attests that he had been informed that "the Sanshi product was being manufactured by other companies in China as a private label manufacturing job and that the subject of the recall was in fact a Sanshi product bearing a different company's label." (Haesloop Aff. ¶ 4).

[6] Pappas v. Middle Earth Condominium Assoc., 963 F.2d 534 (2d Cir. 1992), upon which plaintiff relies, is not to the contrary. In Pappas, the Second Circuit reversed a defense verdict and remanded for a new trial based on defense counsel's improper arguments in summation. Id. Defense counsel had argued to the jury that plaintiff, who was injured in Vermont while visiting from New Jersey, was likely to be less careful than Vermont residents when confronted by ice and snow. Id. at 539. In Pappas, unlike here, the court allowed defense counsel to pursue an improper line of argument over plaintiff's objection and did not give a curative instruction. Id. at 540.

### C. Admission of Evidence Regarding Compliance with Industry Standards

By letter dated October 3, 2005, plaintiff moved to preclude defendant from introducing evidence that Trippe's surge suppressor complied with applicable industry standards. On October 6, 2005, I denied plaintiff's motion from the bench. On October 17th, I issued an opinion setting forth the reasons for that denial. See Church Ins. Co. v. Trippe Manufacturing Co., 04 Civ. 6111, 2005 WL 2649332 (S.D.N.Y. Oct. 17, 2005). At trial, defendant introduced testimony that Trippe's surge protector complied with standards promulgated by Underwriter's Laboratories, Inc. ("UL"). (Tr. 540-41). When this testimony was presented, I cautioned the jury that, while the testimony was relevant, it was "simply part of what you will put together" in arriving at "a conclusion with respect to liability" and that it was "one aspect, but only one aspect, of the proof that we have heard." (Tr. 541). Then, after closing arguments, I instructed the jury as follows:

> You have heard testimony regarding standards of the industry. Compliance with industry standards does not necessarily mean that the defendant's product was reasonably safe but rather is simply a relevant aspect of your over all consideration of the issues. Your job is to determine whether the surge protector was defective after considering all of the relevant evidence.

(Tr. 924).

Plaintiff now argues, once again, that it was error to allow this testimony. Plaintiff asserts that compliance with industry standards is irrelevant in strict products liability actions where, as here, there is no parallel negligence claim. However, as is set forth in my October 17, 2005 Order, where plaintiff alleges a design defect, such evidence is admissible:

> While compliance with industry standards is certainly not dispositive of a design defect claim grounded in strict products liability, and would also be insufficient to support summary judgment, such evidence should be admissible at trial. Compliance with industry standards may be relevant to the question of whether a product was reasonably safe as designed, and with respect to the feasibility of alternative designs. Thus, when accompanied by a proper limiting instruction, a jury may consider industry standards in determining the existence of a design defect. Not to permit such evidence would, it seems to me, unfairly limit a defendant's opportunity to provide the trier of fact with information that may be helpful in its assessment of liability.

Church Ins. Co., 2005 WL 2649332, at *2. Plaintiff provides no reason to revisit this conclusion.[7]

### D. Testimony Regarding the Lack of Other Fires Caused by Trippe's Product

During the direct examination of Trippe's president, Barre Seid, defense counsel asked Seid whether he was "aware of any claims similar to this one in the Isobar 4 line."[8] (Tr. 546). Over plaintiff's objection, Seid answered that he was not. (Tr. 547). Later, during direct examination of defendant's liability expert, Dr. Andrew Neuhalfen, defense counsel asked Neuhalfen whether he, in his experience, ever "had an allegation of a fire outside this metal box" (referring to the Trippe surge suppressor). (Tr. 731). Plaintiff's objection was again overruled, and Neuhalfen responded that he had not. (Id.)[9] Plaintiff now argues that the admission of this testimony was error, and that error caused plaintiff substantial prejudice.

In Forrest v. Beloit Corp., 424 F.3d 344, 355 (3rd Cir. 2005), the Third Circuit noted that the admission of evidence regarding lack of prior accidents in product liability cases is governed by federal law, specifically, Federal Rules of Evidence 401, 402 and 403. These Rules provide that all relevant evidence is admissible, except that district courts may exclude relevant evidence if "the probative value of that evidence is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "Accordingly, most courts admitting evidence of the absence of prior accidents in product liability cases have done so only where the testifying witness . . . has testified that (a) a significant number of substantially identical products have been used in similar circumstances over a period of time; (b) the witness would likely be aware of prior

---

[7] Plaintiff argues that in my October 17th Order, I mischaracterized the court's holding in Sanchez v. Fellows Corp., 94 Civ. 1373, 1996 WL 507342 (E.D.N.Y. Sept. 4, 1996). Sanchez involved both a design defect claim and a third party negligence action brought by the manufacturer of the product against plaintiff's employer. Plaintiff argues that the industry standard at issue in Sanchez concerned the employer's duty of care rather than the product's specifications. Sanchez addressed the relevance of industry standards in denying the manufacturer's motion for summary judgment on plaintiff's design defect claim. See Sanchez, 1996 WL 507342, *4 ("Although industry standards may provide relevant evidence in a design defect case, they are not dispositive."). While the industry standard at issue in Sanchez did involve the employer's duty to provide safe access to the product, the standard was offered by the manufacturer to show that the product was not defective. Id.

[8] The Isobar 4 is the model of the surge suppressor alleged to have caused the fire at the Cathedral.

[9] Earlier in the trial, during the cross examination of plaintiff's expert, Dr. John Duncan Glover, defense counsel asked Dr. Glover if he was aware of any other fires involving Trippe surge suppressors. (Tr. 497). Plaintiff did not object to the question, and Dr. Glover answered that he was not. (Id.)

8

accidents involving these products; and (c) to the witness'[] knowledge, no such prior accidents have occurred." Forrest, 424 F.3d at 355-56.

Here, plaintiff argues that defendant failed to establish that the "Revision A" circuit board contained in the unit found in the fire was substantially identical to the "Revision B" circuit board contained in most units sold by Trippe. However, one of plaintiff's experts, David Powell, testified that the two types of boards "appear to have a similar layout, construction, and location." (Tr. 387). Furthermore, in response to a question posed by the Court, Powell testified that he was "unable to tell what the difference is" between the two boards, "because they're so close." (Tr. 389). Thus, testimony at trial had established that the Revision A and Revision B boards were sufficiently similar to justify the admission of testimony regarding the lack of prior fires in both types of units.

Furthermore, Seid, as Trippe's president since the mid 1960's, was in a position to know of other allegations of fires involving Trippe units. (Tr. 532).[10] As set forth above, Seid testified that he was unaware of any allegations of fires involving Isobar 4 surge suppressors. Thus, defendant established a proper foundation for testimony regarding the lack of prior fires involving Trippe surge suppressors. See Forrest, 424 F.3d at 355-56.

### E. Preclusion of Defendant's Liability Expert

Plaintiff moved in limine to preclude defendant's liability expert, Dr. Neuhalfen, from testifying due to the late disclosure of his expert report. I denied plaintiff's motion prior to trial. Plaintiff now argues that my ruling was error. Pursuant to the Pre-Trial Scheduling Order, plaintiff's expert reports were due by August 15, 2005, and defendant's reports by September 2, 2005. Defendant did not submit Dr. Neuhalfen's report until September 9, 2005. In addition, defendant did not submit certain photographs and test results upon which the report was based until September 13, 2005. A list of Dr. Neuhalfen's testimony in other proceedings was not provided to plaintiff until September 16, 2005. To justify this late production, defendant contends that Dr. Neuhalfen did not

---

[10] While Neuhalfen, who was not employed by Trippe, may not have been in such a position, any error in allowing Neuhalfen to respond to defense counsel's single question on the subject did not significantly prejudice plaintiff, particularly since Seid had already testified to the lack of prior fires.

receive from plaintiff certain items recovered from the fire which he was to analyze until August 29, 2005, thus engendering the delay.

The imposition of sanctions under Rule 37(c) for failure to comply with disclosure obligations is discretionary, and "preclusion will be ordered only in rare cases." Semi-Tech Litig., L.L.C. v. Bankers Trust Co., 219 F.R.D. 324, 325 (S.D.N.Y. 2004). Dr. Neufeld's testimony was central to defendant's case, and I did not find preclusion to be warranted. That finding was well within my discretion.

### F. Testimony of Defendant's Damages Expert

Plaintiff claims I erred by allowing Kenneth Bucher to testify for the defendant on the damage to the Cathedral caused by the fire. Plaintiff argues that Bucher was not qualified to testify as an expert on the subject of damages, and that certain portions of his testimony concerning "actual cash value" should have been stricken, because plaintiff contends that concept was irrelevant to the calculation of damages in this case. I need not reach plaintiff's argument regarding the admissibility of Bucher's testimony because the jury did not reach the question of damages. The jury returned a verdict for the defendant based on their finding that Trippe's product was not defective. (Tr. 932).

### III. CONCLUSION

For the reasons set forth above, plaintiff's motion for a new trial is DENIED. The Clerk of the Court is directed to close this motion and remove this case from my docket.

SO ORDERED.
December 19, 2005
New York, New York

U.S.D.J.